IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**MORGAN L. STEINHILBER,**

   **Plaintiff,**

 v.             Civil Action No. 3:23cv185

**ALL ACCESS SERVICES, LLC,**

  **SERVE:**
  **William H. Dougherty, Reg. Agent**
  **8017 Stuarts Hollow Lane**
  **Mechanicsville, VA 23111**

**CARMAX BUSINESS SERVICES, LLC,**
**d/b/a CARMAX AUTO FINANCE,**

  **SERVE:**
  **Corporation Service Company, Reg. Agent**
  **100 Shockoe Slip, Fl. 2**
  **Richmond, VA 23219**

   **Defendants.**

## COMPLAINT AND DEMAND FOR JURY TRIAL

## INTRODUCTION AND PRELIMINARY STATEMENT

1. This is an action by a consumer alleging damages for violations of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.,* which prohibits debt collectors from engaging in abusive, deceptive, and unfair collection practices, arising from the illegal seizure of Plaintiff's motor vehicle by Defendant All Access Services, LLC when it had no legal right to take her vehicle. This action is also brought against CarMax Auto Finance, for its negligence in the wrongful seizure of Plaintiff's vehicle. Plaintiff also seeks money damages for conversion and pursuant to the Uniform Commercial Code (UCC) for, among other things, the

seizure of her automobile by Defendants CarMax Auto Finance and Access Services, LLC when they had no right to do so, for their failure to comply with Title 8.1 and with Title 9A of the UCC, for their wrongful conversion of her vehicle, and for trespass to chattels. Plaintiff also seeks statutory damages, actual damages, and punitive damages as the Court may allow, along with costs and attorney's fees against Defendant All Access Services, LLC.

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, the FDCPA, 15 U.S.C. § 1692k(d), and has supplemental jurisdiction of the state law claims regarding the same transaction and events under 28 U.S.C. § 1367(a).

3. Venue is proper in the Court pursuant to 28 U.S.C. § 1391(b)(1).

## PARTIES

4. Plaintiff Morgan Steinhilber ("Ms. Steinhilber") is a natural person who resides in Hopewell, Virginia. Ms. Steinhilber is a consumer within the meaning of the FDCPA, as defined at 15 U.S.C. § 1692a(3).

5. Defendant All Access Services LLC is an entity that uses one or more instrumentalities of interstate commerce or the mails in businesses the principal purpose of which is the enforcement of security interests, including the taking of nonjudicial action to effect dispossession of property claimed as collateral through enforceable security interests.

6. Defendant CarMax Business Services, LLC, d/b/a CarMax Auto Finance (hereinafter "CarMax Auto Finance") is a foreign corporation with its principal place of business located at 2711 Centerville Road, Suite 400, Wilmington, DE 19808 and has as its registered agent Corporation Service Company located at 100 Shockoe Slip, Fl 2, Richmond, Virginia 23219.

## STATEMENT OF FACTS

**Ms. Steinhilber finances the sale of a used motor vehicle through Virginia Credit Union**

7. On January 28, 2020, Ms. Steinhilber bought a 2011 Mitsubishi Outlander Sport from Integrity Auto Sales & Services, LLC in Powhatan, Virginia.

8. She financed the purchase of the vehicle through Virginia Credit Union.

9. She faithfully made her monthly payments fully and on time, and she was never late on a payment

10. When she bought the vehicle she received a clean Virginia title to it, and no liens existed on the vehicle at the time of sale.

**CarMax Auto Finance seized Ms. Steinhilber's vehicle even though she had no loan account with CarMax Auto Finance**

11. At around 6:40 AM on Friday, August 26, 2022, Ms. Steinhilber was awakened by a telephone call from her mother, Mandy Blackburn, who called to ask where Ms. Steinhilber's vehicle was.

12. Ms. Steinhilber told her mother that the Outlander was parked on the street in front of the house.

13. Her mother said that it was not there.

14. Ms. Steinhilber went to the front door, looked outside, and saw that her vehicle was not there.

15. She then contacted the non-emergency police phone number and spoke with a dispatcher about her missing vehicle.

16. The dispatcher told Ms. Steinhilber that her vehicle had been towed by CarMax Auto Finance.

17. The dispatcher gave Ms. Steinhilber the telephone number for the tow company who the police dispatcher said had taken her vehicle, who Plaintiff later learned was Defendant All Access Services, LLC.

18. Ms. Steinhilber waited until 9:00 AM, when the tow company, Defendant All Access Services, LLC opened, to call.

19. She spoke by phone with a female employee, who told her that the Outlander had a lien on it, on orders from CarMax Auto Finance.

20. The All Access Services, LLC employee told the Plaintiff that CarMax Auto Finance sent her company an order of repossession.

21. The All Access Services, LLC employee told Ms. Steinhilber that she could not get any of her belongings out of her vehicle.

22. The All Access Services, LLC employee said that Ms. Steinhilber could not have her vehicle back until she contacted CarMax Auto Finance to get them to take the lien off her Outlander.

23. The All Access Services, LLC employee refused to give Ms. Steinhilber the name of her company, All Access Services, LLC.

24. The All Access Services, LLC employee refused to give Ms. Steinhilber the location of All Access Services, LLC.

25. Ms. Steinhilber then Googled CarMax Auto Finance and telephoned them.

26. She spoke with a female employee at CarMax Auto Finance.

27. The CarMax Finance employee told Ms. Steinhilber that she had to send in paperwork – her loan documentation from the Virginia Credit Union, insurance documentation, title documentation, and registration documentation, to prove that the vehicle was hers.

28. Ms. Steinhilber told the CarMax Auto Finance employee that she could not do that because all this paperwork was in her vehicle and that All Access Services, LLC had refused her access to the vehicle.

29. The CarMax Auto Finance employee then put Ms. Steinhilber on hold.

30. The CarMax Auto Finance employee hung up without coming back on the line.[1]

31. Simon Moreno, Ms. Steinhilber's significant other, then called CarMax Auto Finance.

32. Mr. Moreno got through to a different female CarMax Auto Finance employee.

33. This CarMax Auto Finance employee said that she was going to open a case and contact the tow company and then get back to them.

34. This CarMax Auto Finance employee never called back.

35. Ms. Steinhilber then called Virginia Credit Union to explain the situation and get copies of her loan documentation to prove to CarMax Auto Finance that the Outlander was hers.

36. The Virginia Credit Union employee said that the loan documentation would take twenty-four to forty-eight hours through email but that she can go into any branch to pick up the documentation.

37. Ms. Steinhilber and Mr. Moreno went to the Virginia Credit Union Colonial Heights branch office to pick up the documentation.

---

[1] This is not an infrequent occurrence. Consumers spend hours trying to resolve servicing errors, frequently with no success, usually spending hours attempting to navigate the lender's voice mail system in search of someone who might provide reliable information about the borrower's account or have the authority to resolve disputes, a process described by one court as a "vexing and protracted undertaking." *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, LLC*, 214 F.3d 872 (7th Cir. 2000).

38. After they explained the situation, the Virginia Credit Union employees printed the loan documentation and told Ms. Steinhilber that the documentation that Virginia Credit Union gave her was enough to prove the vehicle is in her name, and that any lien was with Virginia Credit Union, not CarMax Auto Finance.

39. The Virginia Credit Union employees told her that if All Access Services, LLC does not give her vehicle back to her after showing them the documents, she should call the police and then call Virginia Credit Union back so they could report it with their teams.

40. Simon Moreno then called the tow yard (who Plaintiff and Mr. Morena later learned was Defendant All Access Services, LLC) back and explained the situation them.

41. The same female employee told him that they still could not give the vehicle back unless the loan is changed through CarMax Auto Finance.

42. Mr. Moreno told the tow yard employee that Virginia Credit Union had told Ms. Steinhilber and him that if they continued to refuse to release the vehicle even after being shown the documents, they would then have to contact the authorities.

43. The All Access Services, LLC employee then said okay and hung up the phone.

44. Because the All Access Services, LLC employee would not identify the name and location of the towing company, Mr. Moreno then Googled the telephone number and found the name and address for Defendant All Access Services.

45. He then called the telephone number for All Access Services, LLC again.

46. They hung up on him again.

47. After that, Mr. Moreno and the owner of All Access Services, LLC were on the telephone together.

48. The owner begged Mr. Moreno not to involve the police.

49. The owner said that doing so would be a huge waste of everyone's time.

50. The owner also said that he could not do anything about Ms. Steinhilber's vehicle.

51. The All Access Services, LLC owner stated that Ms. Steinhilber needed to call another phone number.

52. The All Access Services, LLC owner said that if she had not called that number, she had not even started to try and get her vehicle back.

53. Mr. Moreno told the owner that he and Ms. Steinhilber were going to go to the All Access Services, LLC tow lot and that they were contacting the police.

54. They called the Richmond City Police Department and were told to call back when they were ten minutes away from All Access Services, LLC.

55. When they called the Richmond Police Department again, they were transferred to the Henrico County Police Department.

56. Three Henrico County police officers met Ms. Steinhilber and Mr. Moreno at the All Access Services, LLC tow lot.

57. Mr. Moreno explained the situation to the Henrico County police officers.

58. He handed them Ms. Steinhilber's Virginia Credit Union loan papers.

59. She told the police officers that she had personal property in her Outlander, including her wallet, credit and debit cards, cash, work equipment, and her neighbor's house key, which she had so that she could feed her neighbor's two cats.

60. The Henrico County police officers went inside to speak with the owner.

61. One of the officers went inside, and then came back out to report that the owner would give Ms. Steinhilber the keys to her neighbor's house because he felt bad about the cats and that he loves animals, but that he would not release any of the other personal property.

62. One of Defendant All Access Services, LLC 's male employees went to Ms. Steinhilber's Outlander and came back with her neighbor's house key.

63. Ms. Steinhilber called Virginia Credit Union back to tell them that she could not get her vehicle back.

64. Virginia Credit Union said they would escalate the situation further with one of their teams.

65. Ms. Steinhilber then called CarMax Auto Finance back and they said they would escalate the situation further with one of their teams.

66. On the following Saturday morning the same male employee who returned Ms. Steinhilber's neighbor's house key called and said that CarMax Auto Finance had contacted All Access Services, LLC to say that All Access Services, LLC could release the vehicle.

67. He also said that Ms. Steinhilber had to sign a release agreeing not to sue him or the tow company before they would let her have her vehicle back.

68. The tow company brought the Outlander to Ms. Steinhilber's home.

69. The tow company made her sign the release before they would leave Ms. Steinhilber's Outlander.

70. There was damage to her vehicle, including scratches that had not been there before.

71. Ms. Steinhilber has also suffered damages that include, but are not limited to, lost income from work.

72. Ms. Steinhilber suffers from generalized anxiety disorder (G.A.D.) and Major Depressive Disorder.

73. She has experienced anxiety, anxiety attacks, and depression as the result of the Defendants' acts and omissions.

74. She fears that the experience has caused damage to her business reputation.

**As a debt collector, Defendant All Access Services, LLC had no right to take possession of the vehicle**

75. At the time, Virginia Credit Union had a security interest in the Outlander and was the creditor to whom Ms. Steinhilber owed monthly payments on the financing for the vehicle.

76. For the purpose of § 1692f(6), the term "debt collector" as defined by the FDCPA includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. 15 U.S.C. § 1692a(6). ("For the purpose of section 1692f(6) of this title, (the term "debt collector") also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.")

77. Under the FDCPA, the taking of nonjudicial action to effect dispossession or disablement of property claimed as collateral through an enforceable security interest is a *per se* unfair practice if there is no present right to possession of the property, when done with respect to property claimed as collateral for a debt incurred primarily for personal, family, or household purposes.

78. There was no present right to possession of Ms. Steinhilber's car by anyone other than Ms. Steinhilber at the time of its seizure.

79. Ms. Steinhilber purchased the Outlander as her personal motor vehicle purchase, having purchased it primarily for personal, family, or household purposes, bringing the seizure of Plaintiff's vehicle within the purview of the FDCPA. 15 U.S.C. § 1692a(5).

80. Defendants' seizure of Ms. Steinhilber's vehicle was covered by the Title 9A of the UCC, which applies to any transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract. Va. Code § 8.9A-109(a)(1). *Cappo Management V, Inc., t/a Victory Nissan of Chesapeake v. Britt*, 283 Va. 33, 38 (Va. 2011); *Barnette v. Brook Road, Inc.*, 457 F. Supp. 2d 647, 658 (E.D. Va. 2006).

81. CarMax Auto Finance had a duty to ensure that it only seized a vehicle, Ms. Steinhilber's or anyone else's, if there was an account with CarMax that was in default.

82. Ms. Steinhilber did not have an account with CarMax.

83. Ms. Steinhilber has never had an account with CarMax.

84. Ms. Steinhilber has never purchased a vehicle from CarMax.

85. Ms. Steinhilber has never set foot on a CarMax lot.

86. Ms. Steinhilber did not have an account with CarMax that was in default.

87. All Access Services LLC functioned as an agent of CarMax Auto Finance for the purpose of taking or threatening to take any nonjudicial action to effect dispossession of property claimed as collateral through enforceable security interests. *Watson v. United Consumers, Inc.*, 2010 U.S. Dist. LEXIS 58916, *10 (ED Va. 2010).

88. Defendants had no factual basis to seize Ms. Steinhilber's car.

89. Defendants had no legal basis to seize her car.

**COUNT I**
**VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT –**
**DEFENDANT ALL ACCESS SERVICES LLC**

90. The allegations of the foregoing paragraphs of the Complaint are incorporated by reference.

91. By the repossession, Defendant All Access Services LLC took nonjudicial action to effect dispossession or disablement of Plaintiff's vehicle at a time when there was no present right to possession of the vehicle, in violation of U.S.C. § 1692f(6).

92. As a result of the acts and omissions of Defendant All Access Services LLC, Plaintiff has suffered actual damages and injury, including but not limited to, severe stress, mental anguish and suffering, emotional distress, humiliation and embarrassment, lost time from work, damage to her professional reputation, and loss of the use of her vehicle.

## COUNT II
### NEGLIGENCE – DEFENDANT CARMAX AUTO FINANCE

93. The allegations of the foregoing paragraphs of the Complaint are incorporated by reference.

94. CarMax Auto Finance was negligent in requesting the seizure of the vehicle because it had a duty not to take property it had no right to take and in breach of that duty instructed All Access Services LLC to take it.

95. As a direct and proximate result of CarMax Auto Finance's negligence, Plaintiff has suffered actual damages and injury, including but not limited to, severe stress, mental anguish and suffering, emotional distress, damage to her professional reputation, and loss of the use of her vehicle.

96. CarMax Auto Finance acted with actual malice, gross negligence and reckless disregard for Plaintiff's rights and interests, and in such a fashion as to evince a willful and wanton disregard of the rights of Plaintiff, and as to justify an award of punitive damages against CarMax Auto Finance.

## COUNT III
## VIOLATION OF UNIFORM COMMERCIAL CODE –
## DEFENDANT CARMAX AUTO FINANCE

97. The allegations of the foregoing paragraphs of the Complaint are incorporated by reference.

98. Under Va. Code § 8.9A-609, unless otherwise agreed, a secured party, such as CarMax Auto Finance, has on default the right to take possession of collateral securing its account.

99. Plaintiff never had an account with CarMax Auto Finance and thus she was not in default.

100. CarMax Auto Finance's lien on the title of the Outlander had been previously released and CarMax Auto Finance had no right to take possession of Plaintiff's Outlander.

101. Defendant CarMax Auto Finance accordingly failed to comply with Part 6 of Title 9A of the UCC.

102. As a result of Defendant CarMax Auto Finance's failure to repossess the vehicle in a commercially reasonable manner, Defendant CarMax Auto Finance is liable to Ms. Steinhilber for any loss occasioned by its failure to comply with the UCC. Ms. Steinhilber has suffered actual damages and injury, including but not limited to, severe stress, mental anguish and suffering, emotional distress, lost time, damage to her professional reputation, and loss of the use of her vehicle.

103. Defendant's failure to comply renders it liable to Plaintiff for any loss caused by Defendant's failure to comply with Title 9A and Part 6, the default provisions of Title 9A, and, in any event, for an amount not less than the credit service charge plus ten percent of the principal amount of the obligation or the time-price differential plus ten percent of the cash price, as provided by Va. Code § 8.9A-625.

## COUNT IV
## CONVERSION –
## DEFENDANTS CARMAX AUTO FINANCE AND ALL ACCESS SERVICES LLC

104. The allegations of the foregoing paragraphs of the Complaint are incorporated by reference.

105. Defendants' actions in seizing Plaintiff's car when they had no right to do so and not returning it as demanded constituted the tort of conversion, entitling Plaintiff to recover, among other things, the value of her vehicle at the time and the place of the taking.

106. As a direct and proximate result of Defendants' conversion, Plaintiff has suffered actual damages and injury, including but not limited to, severe stress, mental anguish and suffering, emotional distress, lost time, damage to her professional reputation, and loss of the use of her vehicle.

107. Defendants acted with actual malice, gross negligence and reckless disregard for Plaintiff's rights and interests, and in such a fashion as to evince a willful and wanton disregard of the rights of Plaintiff, and as to justify an award of punitive damages against Defendants.

## COUNT V
## TRESPASS TO CHATTELS –
## DEFENDANTS CARMAX AUTO FINANCE AND ALL ACCESS SERVICES, LLC

108. The allegations of the foregoing paragraphs of the Complaint are incorporated by reference.

109. Defendants' actions in intentionally seizing Plaintiff's vehicle while it was in the rightful possession of the Plaintiff, and dispossessing Plaintiff of her Outlander when they had no right to do so constituted a trespass to chattels, entitling Plaintiff to recover, among other things, the value of her vehicle at the time and the place of the taking, the loss of use of Plaintiff's vehicle resulting from the trespass to her property.

110. As a direct and proximate result of Defendants' trespass, Plaintiff has suffered actual damages and injury, including but not limited to, severe stress, mental anguish and suffering, emotional distress, lost time, damage to her professional reputation, and loss of the use of her vehicle.

111. Defendants acted with actual malice, gross negligence, and reckless disregard for Plaintiff's rights and interests, and in such a fashion as to evince a willful and wanton disregard of the rights of Plaintiff, and so as to justify an award of punitive damages against CarMax Auto Finance.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that the Court grant the following relief:

1. Declaratory relief that Defendant All Access Services, LLC violated the Fair Debt Collection Practices Act;

2. Award Plaintiff statutory damages against All Access Services, LLC for its violations of the Fair Debt Collection Practices Act;

3. Award Plaintiff actual damages against Defendant All Access Service, LLC for its violations of the Fair Debt Collection Practices Act;

4. Award Plaintiff actual damages against Defendant CarMax Auto Finance for its negligence;

5. Award actual damages against Defendant CarMax Auto Finance for its violations of the UCC;

6. Award Plaintiff statutory damages against Defendant CarMax Auto Finance for its violations of the UCC;

7. Award actual damages against Defendants CarMax Auto Finance and All Access Services, LLC for their conversion of Plaintiff's vehicle;

8. Award actual damages against Defendants CarMax Auto Finance and All Access Services, LLC for their trespass to chattels with respect of Plaintiff's vehicle;

9. Award Plaintiff punitive damages against Defendant CarMax Auto Finance for its gross negligence and willful and wanton disregard of Plaintiff's rights;

10. Award Plaintiff costs and attorney's fees against Defendant All Access Services, LLC for its violations of the Fair Debt Collection Practices Act;

11. Such other relief as may be just and proper.

**TRIAL BY JURY IS DEMANDED**

                              Respectfully submitted,
                              MORGAN L. STEINHILBER
                              By Counsel

  /s/ Dale W. Pittman_____
By: Dale W. Pittman, VSB#15673
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, VA 23803
(804) 861-6000
(804) 861-3368 (Fax)
dale@pittmanlawoffice.com

Thomas D. Domonoske, VSB #35434
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1A
Newport News, VA  23601
Telephone (540) 442-7706
tom@clalegal.com

Counsel for Plaintiff